## J. L. STILL, Guardian, vs. C. DAVIDSON et al.

ADMINISTRATION: *Final account. Confederate money.*

Where the administratrix of an estate sold personal property, under an order of the probate court of 1864, and in the same year made her first annual account, showing a balance in her hands of $1,735.02, and in 1871, presented her final account and claimed that the balance in her

hands, as reported, was in confederate money. *Held*, that it was competent for her to show that fact, and the further fact that she could not pay the debts of the estate with it, or loan it to any person on any terms.

APPEAL from the Chancery Court of *Panola* County.

Hon. J. F. SIMMONS, Chancellor.

The administratrix of Charles H. Johnson, deceased, in 1863, sold the personal property belonging to said estate. In 1864, she presented her first annual account to the probate court of Panola county, which was approved by the court, showing a balance in her hands of $1,735.02.

In 1871, she presented her final account and claimed that the balance due, as reported by her, in her annual account, was in confederate money, and that the same ought not to be a charge against her, and claimed credit for the amount so held in worthless funds. Exceptions were filed. The chancellor overruled the exceptions, and permitted the administratrix to prove that the said sum was received and held by her in confederate money, and decreed that she was not liable for the same, and the case comes to this court upon appeal. The action of the chancellor in rendering the decree is assigned for error.

*H. W. Walter & L. P. Cooper*, for appellants :

The annual account of a guardian is conclusive as to assets in his hands of whatever character. If in money, it will be presumed to be lawful money. McFarlane *v.* Randle, 41 Miss., 411 ; Bailey *v.* Dilworth, 10 S. & M., 404 ; Coffin *v.* Bramlitt, 42 Miss., 194. Parol evidence will not be admitted. Adams *v.* Westbrook, 41 Miss., 385. The administratrix, the widow of deceased, claims $500 balance for money received by her husband from her, as an item in her account. He received $1,999 of her, bought a share for her at $1,499, which was emancipated. She cannot now amend and claim the $1,999. She is estopped. Joslin *v.* Caughlin, 4 Cushm., 134 ; Bohannon *v.* Fulton, 31 Miss., 348 ; Martin *v.* Tarver, 43 id., 517.

The claim is barred except the $500, which was probated.

Pickett *v.* Ford, 4 How., 246; Branch Bank of Alabama *v.* Rhew, 8 George, 110; Miller *v.* Jefferson College, 5 S. & M., 651; Helm *v.* Smith, 2 id., 403; Perry *v.* West, 40 Miss., 233; Brown *v.* Hill, 4 Cushm., 643.

*H. H. Chalmers & R. H. Taylor*, for appellees:

There are two things complained of:

1. The administratrix was permitted to show that the sum reported was in confederate money.

2. She had credited herself with $500, and on final account claims $1,999.

The statute of limitations did not run against this claim. 1 Cushm., 88; 2 George, 426; 5 id., 322; 44 Miss., 229.

It is not barred when the administrator knew of its existence. Perry *v.* West, 40 Miss., 233; Sims *v.* Sims, 1 George, 333. See George Dig., p. 297, § 277.

It was not error to permit proof that the sum was in confederate money. McFarlane *v.* Randle, 41 Miss., 411; Bailey *v.* Dilworth, 10 S. & M., 404; Coffin *v.* Bramlitt, 42 Miss., 194.

These cases relied on, are different from the case at bar. Appellee kept the identical money on hand, and brought it into court, and she ought not to be compelled to account for it in good money. The case is within the rule in Coffin *v.* Bramlitt, as laid down by PEYTON, C. J., and to the same effect is the act of 1865, p. 143. In Williams *v.* Campbell, 46 Miss., 57, the court held Williams liable for the value of the money at the time he received it, but he had been guilty of a breach of his trust. In the case at bar, she was not bound to pay her own claim with the confederate money, because others would not take it.

TARBELL, J., delivered the opinion of the court.

Charles H. Johnson died in 1863. His widow, now Mrs. Davidson, was appointed administratrix. The personal property of the deceased was sold by order of the probate court.

The first annual account of the administratrix, filed in 1864, stated a balance in her hands due the estate of $1,735.02. This was approved by the court.

In 1871, the administratrix presented her final account in which she claimed that the balance of $1,735.02, last reported, was in confederate money. She also claimed $500 from the estate for money loaned her deceased husband in his life time. To the final account thus stated exceptions were filed as follows :

1. That the $1,735.02 should have been changed in good money ; and,

2. That the $500 item was an improper charge.

Upon the trial, it appeared that the personal property of the estate was sold in 1863, in obedience to the orders of the probate court. Confederate money was received in payment. This money the administratrix offered in payment of debts against the estate, but it was declined. She also made efforts to loan it, but no one would take it on any terms, and the identical money was brought into court on the trial.

The chancellor overruled the exceptions and allowed evidence to prove that the sum of $1,735.02 was received, and held in confederate money, for which the administratrix was not liable. The final decree is in accordance with this theory of the trial.

In relation to the $500 charge, it appeared that in 1860 there was paid to the deceased $1,999, belonging to his wife, derived from the estate of her deceased father. This fact was established by the brother of Mrs. Davidson, who paid the money to the deceased as the separate property of the witness' sister, then Mrs. Johnson.

When this evidence was submitted, a motion was made to change the item of $500 to $1,999, which was allowed. It further appeared that when this money was paid to the deceased, he purchased, at her request, with a part of it, a slave for his wife, paying therefor $1,499, leaving a balance in his hands of the money of his wife, of $500. Title to the slave thus purchased was taken to the deceased, but both husband and wife, and all parties treated and considered the slave to be the sole and separate property of the wife. The slave was not included in the in-

ventory of the property of the estate, nor in the division of the personalty which was made by commissioners.

From the purchase in 1860 or 1861 to the time of emancipation, the slave had been held and treated, by Mrs. Johnson, now Mrs. D., as her own, and the slave had been so regarded by all.

The chancellor held the entire sum of $1,999, to be a present, valid, and binding claim against the estate, and so decreed.

Still, guardian, on behalf of his ward, who, aside from the administratrix, seems to be the only party in interest, appealed to this court.

With reference to the item of $500, the chancellor erred on several grounds. It did not matter that the husband took title to the slave in his own name. He thus became trustee for his wife. Code of 1857, p. 336, art. 24; Code of 1871, § 1779.

The wife had treated the slave as her own. She charged the estate the difference between the cost of the slave and the money of her separate property loaned to her husband. She was, therefore, estopped from setting up any further claim, so far as anything is shown in the record. As the facts now appear, the decree should have been for $500 and interest only.

As to the action of the chancellor in relation to the funds in the hands of the administratrix, and evidence thereof by parol, the question involved is interesting and important in connection with the case of Rogers v. Tullus, recently decided by this court. In that case it was held: 1. That the administrator should settle with the estate on a gold basis for transactions occurring in the latter part of 1861, and the early part of 1862; and upon the basis of confederate money as to dealings in 1863–4; and, 2. That confederate judgments and legal obligations should stand upon the same footing as confederate contracts, with reference to the currency in which they might be discharged. The opinion in that case is referred to for a full discussion of the subject, and for the reasons conducting to the conclusions reached therein.

In the case at bar, the first annual account of the administratrix was filed in 1864, stating a balance in her hands of 1,735

---

---

"dollars," and 2 "cents," which account was approved by the court. In 1871, she presented her final account, claiming that the balance last reported was in confederate money. Exceptions were filed thereto, and thus the question for the court was, as to the right of the administratrix to explain, by parol evidence, the character of the funds in her hands. As previously stated, the personal property of the estate was sold in 1863, in obedience to the orders of the probate court, upon which sale confederate money was received in payment of articles purchased. This money the administratrix offered in payment of debts due by the estate, but its acceptance was declined. She also made efforts to loan it, but without success. Unable to dispose of it on any terms, she kept and brought into court the identical money paid her for property of the estate.

The adjudications upon the question here presented are cited and discussed in Rogers v. Tullus. Dates are material. Upon the reasoning and the authorities in the case referred to, the action of the chancellor on this branch of the case at bar is fully approved.

The decree is reversed, and cause remanded. If there is no further evidence, the cause will be disposed of in accordance with this opinion.